Richard JARZYNKA, Plaintiff,

v.

ST. THOMAS UNIVERSITY SCHOOL OF LAW; Dr. Elisabeth Ann Soifer; and St. Thomas University Defendants.

No. 03–20652–CV–LENARD, 03–20652–CV–SIMONTON.

United States District Court,
S.D. Florida.

March 23, 2004.

Richard Jarzynka, Pittsburgh, PA, pro se.

Adam D. Horowitz, Gilbride Heller & Brown, Miami, FL, Roberto Javier Diaz, J. Patrick Fitzgerald, P.A., Coral Gables, FL, for St. Thomas University School of Law, Elisabeth Ann Soifer, Dr., St. Thomas University, defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (D.E.13), filed on August 11, 2003. On August 28, 2003, Plaintiff Richard Jarzynka filed Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (D.E.20.) On September 9, 2003, Defendants St. Thomas University School of Law and Dr. Elisabeth Ann Soifer filed Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (D.E.23.) On September 11, 2003, Defendants filed Defendants' Supplemental Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (D.E.26.) On September 22, 2003, Plaintiff filed Plaintiff's Request for Judicial Notice Regarding Defendants' Motion to Dismiss. (D.E.27.) On December 22, 2003, Plaintiff filed Plaintiff's Supplemental Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (D.E.46.) Upon review of the motion, the response, the reply, the supplemental reply, the request for judicial notice, the supplemental response, and the record, the Court finds as follows.

## I. Factual Background

The Plaintiff, Richard Jarzynka, was a law school student at St. Thomas University School of Law, beginning in August of 2000. (Am. Compl. at ¶ 20.) On March 23, 2001, Richard Jarzynka was expelled from the Law School program. (Id. at ¶ 22.) The letter of expulsion stated in pertinent part:

> Dear Mr. Richard Jarzynka: The Law School and the University have become aware of serious threats you have made and physically intimidating conduct you have exhibited to members of the Law School Community. The fear you have instilled in these persons and the disruptive effects of your conduct on the educational process warrant your immediate expulsion from the University campus and the Law School program. Therefore, you are hereby expelled, effective immediately. (Am. Compl.; Ex. 5.)

Two weeks prior to the Plaintiff's expulsion, it was reported to St. Thomas University School of Law that the Plaintiff had threatened to blow-up the Legal Writing Office inside the Law School. (Am. Compl; Ex. B.) Also, three students approached Associate Dean Silver with reports of other threats and intimidating conduct on the part of Mr. Jarzynka. (Id.) University counselor Dr. Ann Soifer was requested by Dr. Sarah Shumate and Dean Silver to meet with the students who alleged that Mr. Jarzynka had made prior threats. (Id.) At that time, Dr. Ann Soifer stated that she had previously counseled Richard Jarzynka. (Id.) Dr. Ann Soifer then met with the three students for two hours, and reported to Dean Silver that Mr Jarzykna was the "most volatile and frightening student she had encountered." (Id.) She further stated that "he was decompensating quickly and posed a threat of serious harm." (Id.) Dean Silver told

Dean Makdisi of Dr. Soifer's statements regarding the Plaintiff, leading to the decision to expel him. (Id.)

Richard Jarzynka denies ever threatening to harm any person or property of St. Thomas University or the Law School. (Am. Compl. at ¶ 23.) Plaintiff further avers that during the relevant time period, he was in a "normal, healthy, and stable state of mind." (Id. at ¶ 84.) He notes that he met with Dr. Soifer on February 5, 2001, for the purpose of renewing his prescription for medications, which he has taken since 1994 to treat bipolar disorder. (Id. at ¶ 65.) At that time, Dr. Soifer did not recommend any further counseling or evaluation for Plaintiff. (Id. at ¶ 66.) He has included a copy of her case notes which states that Mr. Jarzynka, "is doing well in law school" and that "he has learned the necessity of medication and is sensitive to changes within himself." (Id.; Ex. 3.) Mr. Jarzynka states that this was the only time he was personally evaluated by Dr. Soifer. (Id. at ¶ 68.)

Mr. Jarzynka was not provided any of the rights or protections afforded students to challenge disciplinary actions, as stated in the Law School Code of Academic Integrity. (Id. at ¶ 26.) Specifically, he was not told of any allegations against him until he received the expulsion letter dated March 23, 2001. (Id. at ¶ 24, 51–53.) An academic committee was never formed to investigate and consider the charges against him, as provided for in the Law School's Code. (Id. at ¶ 26.) Plaintiff was never provided the opportunity to attend a hearing on the accusations made against him, or to make a statement in his own defense. (Id. at ¶ 26, 46, 50.)

The Plaintiff's Amended Complaint states eleven (11) causes of actions includ-

ing: Count 1, Breach of Contract against St. Thomas University School of Law; Count 2, Negligence against St. Thomas University School of Law; Count 3 and Count 6, Defamation against Dr. Soifer, who at all times acted as an agent of St. Thomas University; Count 4 and Count 7: Tortious Interference with a Contract against Dr. Soifer; Count 5 and Count 8: Negligence against Dr. Soifer, as an agent of St. Thomas University; Count 9: Punitive Damages against St. Thomas University School of Law; Count 10 and 11: Punitive Damages against Dr. Soifer.[1]

The Plaintiff's Amended Complaint states that as a result of the Defendants' acts or omissions, he has suffered substantial and permanent losses and damages, including but not limited to: loss of the benefit of a law school education, loss of the monetary value of the scholarship offered to Plaintiff by St. Thomas University, Inc., expenses incurred in traveling to the Law School and in attending the Law School, loss of future income as a lawyer, injury to Plaintiff's character and reputation, embarrassment and humiliation, and shock to his nervous system. (Am. Compl. at ¶ 61.)

## II. Parties' Arguments

### A. Dismissal Under Federal Rule 10(a) and 12(e)

Defendants' Motion to Dismiss argues first that the Plaintiff's Amended Complaint (D.E.2) is asserted against non-existent entities. (Mot. to Dismiss at ¶ 4.) Neither "St. Thomas University" nor "St. Thomas University School of Law" are legal entities. (Id.) Instead, "St. Thomas University, Inc." is the real party in interest. (Id. at ¶ 5.) Defendant St. Thomas

---

1. Counts 6, 7, 8 and 11 state the same causes of action as Counts 3, 4, 5 and 10 respectively, but under the theory of *respondeat superi-* or, the Plaintiff seeks damages against St. Thomas University for the acts or omissions of its agent, Dr. Soifer.

University, Inc. requests that the Court therefore dismiss the Plaintiff's Complaint pursuant to Federal Rule 10(a), which requires every complaint to state the names of the parties. (Reply at 2.)

The Plaintiff responds that his Amended Complaint describes Defendant "St. Thomas University" as a "private university incorporated in the State of Florida." (Resp. at 2.) The Plaintiff concludes therefore that St. Thomas University has been named as a Defendant in its corporate capacity, St. Thomas University, Inc. (Id.) The Plaintiff also argues that "St. Thomas School of Law" is a legal entity capable of being sued. (Resp. at 13–14; see also D.E. 46, Plaintiff's Supplemental Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint.)

Defendants also argue that Plaintiff's Amended Complaint improperly incorporates allegations into counts that have no relevance to the claim raised. (Mot. to Dismiss at 12.) As a result the Amended Complaint is defective and should be dismissed pursuant to Rule 12(e). (Id.) The Plaintiff denies that he improperly incorporated allegations into counts that have no relevance to the claims raised. (Resp. at 15.) The Plaintiff further states that if his Complaint was so vague that it was impossible to comprehend the claims asserted than the Defendants would not have been able to "so skillfully craft their Motion to Dismiss." (Id.) He therefore concludes that any motion by the Defendants for a more definite statement of his claims, pursuant to Federal Rule 12(e), is moot. (Id.)

### B. Dismissal of Negligence Claims (Counts 2, 5 and 8) Pursuant to Federal Rule 12(b)(6)

The Defendants argue, pursuant to Federal Rule 12(b)(6), that Plaintiff's negligence claim should be dismissed. The Defendants state that it is well established in Florida that a university is not liable in negligence for its academic and disciplinary decisions. (Mot. to Dismiss at 3.) Similarly, private universities do not owe a duty of reasonable care in academic and disciplinary matters. (Id. at 4–5.) A mere mistaken decision by the Defendants regarding the Plaintiff is not enough for the Plaintiff to proceed under Florida law. (Id. at 3–4.) The Plaintiff must instead allege that the university acted arbitrarily and for fraudulent purposes in order to state a claim. (Id.) The Defendants therefore request that the Court dismiss Counts 2, 5 and 8 respectively as the Plaintiff's negligence claims are not cognizable under Florida law. (Id at 3–4.)

In addition, the Defendants argue that the economic loss rule bars Plaintiff's negligence claims. (Id. at 5.) The Defendants contend that under Florida law, the economic loss rule bars a cause of action in tort between parties to a contract unless the tort action is distinguishable from or independent of the alleged breach of contract. (Id.)

The Plaintiff responds first that his negligence claim is not based on the University's decision to expel him, but instead on the "false statements made about the Plaintiff by Dr. Soifer." (Resp. at 4, 6.) Plaintiff cites to Paragraph 89 of his Amended Complaint, in which he states that Dr. Soifer "negligently, carelessly and recklessly" advised the Law School that he was "decompensating quickly, volatile, and frightening without first properly examining, interviewing, testing, counseling, or observing" the Plaintiff. (Id.) Plaintiff further states that Dr. Soifer breached her duty to the Plaintiff by falling below the standard of the "Reasonable counselor"

and is subject to liability for negligence[2]. (Id. at 5.) Plaintiff contends that St. Thomas University is liable for the acts of Dr. Soifer under the theory of respondeat superior. (Id.)

The Plaintiff then appears to change his position, and to argue that his negligence claim is based on the University's decision to expel him. He argues that his negligence claim is actually a claim that St. Thomas University acted arbitrarily and capriciously in expelling the Plaintiff. (Id. at 6.) The Plaintiff further contends that this Court must accept that the University acted arbitrarily and capriciously, because a Court must accept as true the statements made by the Plaintiff in his Amended Complaint for purposes of deciding the Defendants' Motion to Dismiss. (Id. at 6–7.) Plaintiff then appears to obfuscate his breach of contract and negligence claim, by stating that, "the School of Law certainly did owe a duty to Plaintiff to comply with the procedures of its own Code." (Id. at 7.)

The Plaintiff concludes by arguing that the economic loss rule does not bar his negligence claims. (Id. at 8.) The Plaintiff states, "The negligence claims are based upon Dr. Soifer's false statements about Plaintiff." (Id.) He therefore appears to again revert to the position that his negligence claims are based solely on Dr. Soifer's allegedly false and negligent statements. The Plaintiff then asserts that his breach of contract action is with the School of Law, whereas his tort claim is against Dr. Soifer and St. Thomas University under the theory of respondeat superior. (Id.) Accordingly, the economic loss rule, which only bars a cause of action in tort between parties to a contract, is not applicable. (Id.)

## C. Dismissal of Tortious Interference Claims (Counts 4 and 7) Pursuant to Federal Rule 12(b)(6)

The Defendants contend that it is well-settled Florida law that a cause of action for interference does not exist against one who is himself a party to the contract allegedly interfered with. (Mot. to Dismiss at 6.) As a result, Plaintiff's claim in Count VII that St. Thomas interfered with its own contract must be dismissed. Count IV's claim that Dr. Soifer, acting as an agent for St. Thomas, interfered with the alleged contract must similarly be dismissed. (Id.) The Defendants further argue that the Plaintiff has failed to allege that the Defendants intentionally and unjustifiably interfered with the purported contractual relationship. (Id. at 7.)

The Plaintiff responds that neither Dr. Soifer nor St. Thomas University are parties to the contract with which they interfered. (Resp. at 8.) Plaintiff contends that the contract in question was formed between the Plaintiff and St. Thomas University School of Law.(Id.) The Plaintiff also asserts that he pled in his Complaint that Dr. Soifer was *unjustified* in reporting to Dean Silver that Plaintiff was "decompensating quickly," "volatile" and "frightening." (Id.) He concludes that the Court should, for the purposes of ruling on Defendants' Motion to Dismiss, assume that Dr. Soifer's comments to Dean Silver were both unjustified and intentional. (Id.)

## D. Dismissal of Defamation Claims (Counts 3,6) Pursuant to Federal Rule 12(b)(6)

The Defendants assert first that the Plaintiff's Amended Complaint fails to al-

---

2. The Defendants respond that the Plaintiff appears to be bringing a professional malpractice claim, without pleading the elements of such a claim and satisfying the pre-suit requirements of such a claim. (Reply at n. 1.)

lege a defamatory statement. (Mot. to Dismiss at 7.) Furthermore, Dr. Soifer's statements that Plaintiff was the "most volatile and frightening student she had encountered" and that Plaintiff was "decompensating quickly and posed a threat of serious harm" are opinion statements, as opposed to statements of fact. (Id. at 8.) Statements of pure opinion do not constitute defamation. (Id.) In addition, the Defendants contend that the statements attributed to Dr. Soifer are subject to a qualified privilege. (Id. at 9.) Where an alleged defamatory statement is subject to a qualified privilege, the plaintiff must allege malice to proceed with his claim. (Id.) The Amended Complaint contains no allegation of malice and accordingly Plaintiff's defamation claims must be dismissed. (Id. at 10.)

The Plaintiff responds that Defendants argument that Soifer's statement was opinion is unavailing because, "it presupposes that what these non-professionals said to Dr. Soifer was factual." (Resp. at 10.) The Plaintiff therefore concludes that Dr. Soifer's defamatory statements to Dean Makdisi were not based on facts and therefore do not constitute opinion. (Id.) The Plaintiff also argues that the Defendant's claim of qualified privilege is "improperly raised in their motion to dismiss and should be averred as an affirmative defense in their answer to the Plaintiff's Amended Complaint." (Id. at 11.) Even if this Court allows Defendants to argue qualified privilege, the Plaintiff contends that he has pled that Dr. Soifer acted with malice. (Id.) The Plaintiff points out that he alleged that Dr. Soifer acted recklessly, without any clinical evidence to support her opinion. The Plaintiff further argues that Dr. Soifer, having met with the Defendant, had personal knowledge contrary to what the law students said. (Id.) Her own notes from meeting with the Plaintiff describe him as "doing well in law school"

and as "sensitive to changes within himself." (Id.) The Plaintiff concludes that Dr. Soifer had reason to know the students' statements were false and recklessly based her own statements upon them. Plaintiff contends that such behavior constitutes malice. (Id. at 11–12.)

### E. Dismissal of Breach of Contract Claims (Counts 1, 5 and 8) Pursuant to Federal Rule 12(b)(6)

The Defendants state that under Florida law the contract between a student and a university is an implied contract. (Mot. to Dismiss at 10.) In the instant case, the Plaintiff attempts to state a cause of action for breach of an express contract based on the terms of a student handbook. (Id. at 11.) The Defendants contend that the Plaintiff must instead allege a breach of an implied contract between himself and the university in order to proceed with his claim. (Id.)

The Plaintiff responds that the contract between himself and the University is express and that its terms are stated in the Handbook and specifically, the Code of Academic Integrity. (Resp. at 12.) The Plaintiff further argues that it makes no difference whether the contract is express or implied. (Id. at 13.)

### F. Dismissal of Punitive Damages Claims (Counts 9, 10 and 11) Pursuant to Federal Rule 8(a) and 12(b)(6)

The Defendants contend that Plaintiff's claim for punitive damages does not comply with Rule 8(a). (Mot. to Dismiss at 11–12.) Also, punitive damages is not a cause of action, but instead a remedy available to the plaintiff if he proves intentional misconduct or gross negligence by the Defendants. (Id. at 12.)

The Plaintiff responds that he is not attempting to state an independent cause of action in Counts 9, 10 and 11, but instead he is alleging that Defendants have exhibited outrageous conduct for which punitive damages should be awarded. (Id. at 14.)

### G. Plaintiff Jarzynka's Argument That Defendants' Motion to Dismiss Violates Federal Rule of Civil Procedure 7(b)(2)

Plaintiff asserts that Defendants' Motion to Dismiss violates Federal Rule 7(b)(2) because the Motion is not written in numbered paragraphs. (Resp. at 3.) The Plaintiff claims that he is thereby prejudiced in that he is unable to specifically identify and address each of the Defendants' averments. (Id.)

### III. Standard of Review

#### A. *Pro Se* Litigant

A *pro se* litigant's pleadings must be construed more liberally than those pleadings drafted by attorneys. *See Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990)("In the case of a *pro se* action....the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers"). However, "this leniency does not give a court license to serve as de facto counsel for a party...or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir.1998)(internal citations omitted). Furthermore, although pro se litigants are entitled to have their pleadings liberally construed, such liberal construction does not extend to a pro se litigant's failure to comply with either federal procedural rules or local court rules. *See, e.g., Wayne*

*v. Jarvis,* 197 F.3d 1098, 1104 (11th Cir. 1999). A Court may *sua sponte* strike a nonconforming pleading without prejudice where a *pro se* party fails to conform with procedural rules. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923–924 (7th Cir.1994).

#### B. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim that fails to state a claim upon which relief can be granted. The Eleventh Circuit has clearly articulated the standard of review for a Rule 12(b)(6) motion to dismiss:

> "The standard of review for a motion to dismiss is the same for the appellate court as it is for the trial court." *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.), *cert. denied,* 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998). "On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens,* 901 F.2d at 1573.

### IV. Analysis

#### A. Plaintiff Jarzynka's Argument That Defendants' Motion to Dismiss Violates Federal Rule of Civil Procedure 7(b)(2)

The Court finds that Defendants' Motion to Dismiss was submitted in a proper format. Federal Rule 7(b)(2)

states that, "The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules." FED. R. CIV. P. 7(b)(2). Federal Rule 10 provides guidance on the form of pleadings. In pertinent part, it states that, "All averments of claim or defense shall be made in numbered paragraphs." FED. R. CIV. P. 10(b). Pursuant to Federal Rule 10(b), a complaint, which states the Plaintiff's claims, must be in numbered paragraphs. Similarly, an answer to a complaint, which states defenses to claims, must be in numbered paragraphs corresponding to the original complaint. A motion to dismiss is a legal memorandum to the Court, and it should be written as a legal memorandum. It would be inappropriate to submit a motion to dismiss in numbered paragraphs.

### B. Motion to Dismiss Negligence Claims (Counts 2, 5 and 8) Pursuant to Federal Rule 12(b)(6)

*Count 2: Plaintiff's Negligence Claim Against St. Thomas University*

█ The Plaintiff's negligence claim against St. Thomas University, Inc. is not cognizable under Florida law. Under Florida law, a student may be suspended or expelled for a breach of a university's rules of conduct. *John B. Stetson University v. Hunt,* 102 So. 637, 640, 88 Fla. 510, 516 (Fla.1924). If a university or its officers suspend or expel a student due to a mistake in judgment or a mistake in fact, the university and its officers are not liable in tort. *Id.* at 640–641, 88 Fla. at 518–519, 102 So. 637. To have an action in tort, a student must allege malice on the part of the institution or its officers. Id. at 641, 88 Fla. at 521, 102 So. 637.

Because Plaintiff is *pro se,* this Court construes his pleadings more liberally than those drafted by an attorney. Supra at 1264. The Court therefore has reviewed the Plaintiff's allegations to discern if there is a factual basis for the Plaintiff to plead malice on the part of St. Thomas University Inc.'s officers or employees. Having carefully reviewed the Plaintiff's Complaint, the Court finds only two areas which might raise an inference of malice.

█ Plaintiff alleges that "Dean Makdisi expelled Plaintiff *arbitrarily and capriciously* without providing Plaintiff with any of the procedures mandated for the taking of such action by the Code (emphasis added)." (Am. Compl. at ¶ 50.) Although the Plaintiff alleges that the Dean acted arbitrarily and capriciously, the Plaintiff includes in his pleadings evidence that Dean Makdisi decided to expel the Plaintiff after a "thorough briefing by Associate Dean Silver and Dr. Soifer." (Am. Compl at Ex. B.) Furthermore Dean Silver and Dr. Soifer informed Dean Makdisi that Plaintiff was a serious threat to the safety of the Law School community. (Id.) Although the Plaintiff disputes that he ever posed a threat to Law School property or students, he does not dispute that Dean Makdisi was informed that he posed such a threat. Having reviewed the facts alleged and all inferences in favor of the Plaintiff, there is no reason to believe that Dean Makdisi acted with malice. Malice, in this context, is best understood as a "wrongful act, done intentionally, without just cause or excuse." *John B. Stetson Univ., et. al.,* 88 Fla. at 514, 102 So. 637, 639. Dean Makdisi expelled the Plaintiff with "just cause or excuse," he was advised that the Plaintiff posed a serious threat to the law school community.

The Plaintiff also alleges that Dr. Soifer made statements about the Plaintiff's mental state which she should have known were false. At points in his Response, the Plaintiff states that his negligence claim is based on Dr. Soifer's allegedly false statements. Supra at 1262. In Paragraph 89

of his Amended Complaint, the Plaintiff states that Dr. Soifer "negligently, carelessly and recklessly" advised the Law School that the Plaintiff was "decompensating quickly, volatile and frightening." (Am. Compl. at ¶ 89.) He further states that Dr. Soifer had previously met with him personally and had recorded a favorable impression of him in her case notes. Supra at 1260. The Plaintiff does not dispute that Dr. Soifer met with students who claimed to have been threatened by him. (Am. Compl. at ¶ 74; Ex. B.) The Plaintiff disputes the veracity of these student allegations, but he does not dispute that Dr. Soifer both heard them and relied upon them. To plead malice, the Plaintiff must allege that Dr. Soifer committed a "wrongful act," "intentionally," "without just cause or excuse." *John B. Stetson Univ., et. al.*, 88 Fla. at 518–519, 102 So. 637, 640–641. The Plaintiff instead plead's that Dr. Soifer showed poor judgment by relying on false reports by students. The Plaintiff has not alleged any facts to substantiate a claim that Dr. Soifer acted with improper motivations or without just cause.

Accordingly, this Court dismisses Plaintiff's claims in Count 2 with prejudice. The Plaintiff has failed to allege that the officers or employees of St. Thomas University acted with malice in the decisions which led to his expulsion, and therefore he has no claim against the University in tort under Florida law. *John B. Stetson University*, 88 Fla. at 521, 102 So. at 641.

### Count 5/8: Plaintiff's Negligence Claim Against Dr. Soifer and St. Thomas University, Inc. under the theory of respondent superior

The Plaintiff alleges that Dr. Soifer breached her duty to the Plaintiff by falling below the standard of the "Reasonable counselor." Supra at 1262. The Plaintiff alleges that Dr. Soifer negligently, care-lessly and recklessly advised the Law School that he was decompensating quickly, volatile and frightening without first properly examining, interviewing, testing, counseling or observing the Plaintiff. Supra at 1262.

The Plaintiff labels his claim as "negligence," but the essence of his claim appears to be defamation. The Plaintiff is asserting that Dr. Soifer recklessly made false statements that he was "decompensating quickly, volatile and frightening." To substantiate his claim that Dr. Soifer acted recklessly, the Plaintiff points out that Dr. Soifer never examined, interviewed, observed, tested or counseled him. Dr. Soifer's statements about the Plaintiff's mental and emotional state were made to a third party, Dean Makdisi, who in turn expelled the Plaintiff from law school. The Plaintiff's "negligence" claim states the elements of a defamation claim: (1) Dr. Soifer published a false statement, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to the plaintiff. *Valencia v. Citibank International*, 728 So.2d 330 (Fla. 3rd DCA 1999). To the extent Plaintiff is in actuality alleging defamation, the Court will shortly consider the merits of that claim. Supra at Analysis, Section D.

Alternatively, the Plaintiff may be attempting to allege malpractice. The Plaintiff states that Dr. Soifer should be held to the standard of a "reasonable counselor." Dr. Soifer met with the Plaintiff on only one occasion, February 5, 2001. Supra at 1260. At that time, Dr. Soifer referred the Plaintiff to Dr. Jorge Caycedo, a psychiatrist, who then prescribed the same medications that the Plaintiff had previously been taking. (Am. Compl. at ¶ 65.) Dr. Soifer acted merely as a gatekeeper in determining that a referral would be appropriate. She did not treat or clinically evaluate Mr. Jarzynka. Mr. Jarzynka is

not claiming that Dr. Soifer rendered defective clinical services or omitted to provide him necessary clinical services. Medical malpractice is defined under Florida law as "a claim arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a) (1999). Mr. Jarzynka's claim in Count 5 does not allege any facts supporting a claim for malpractice.

Because the Plaintiff alleges defamation in Count 3, this Court construes Count 5 as a malpractice claim. Given that Mr. Jarzynka's claim in Count 5 does not allege any facts supporting a claim for malpractice, Count 5 is dismissed with prejudice. Similarly, Count 8, alleging the liability of St. Thomas University under a theory of respondeat superior, is dismissed with prejudice.

### C. Motion to Dismiss Tortious Interference Claims (Counts 4 and 7) Pursuant to Federal Rule 12(b)(6)

■■■■ It is well-settled Florida law that a cause of action for interference does not exist against one who is himself a party to the contract allegedly interfered with. *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3rd DCA), *rev. den.*, 392 So.2d 1371 (Fla.1981), *cert. denied*, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with the contract. *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991), *rev. den.*, 589 So.2d 290 (Fla.1991). An agent of a corporate party to a contract, acting within his capacity and scope as an agent, cannot be considered to be a separate entity or third party for purposes of a claim of tortious interference. *Id.*

■■■ The Plaintiff's claim that Dr. Soifer interfered with his contractual relationship with St. Thomas University School of Law has no merit. The Plaintiff himself alleges that, "Dr. Soifer, at all times material hereto was an employee, agent, servant and/or representative of St. Thomas University . . . . and was at all times material hereto acting within the scope of her employment with the University." Dr. Soifer is therefore an agent of St. Thomas University, Inc. The Plaintiff's contract is with St. Thomas University, Inc.[3] *See e.g., Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Accordingly, Plaintiff's claim of tortious interference fails because it is against a party to the contract allegedly interfered with. The Court therefore dismisses Counts 4 and 7 with prejudice.

### D. Motion to Dismiss Defamation Claims (Counts 3, 6) Pursuant to Federal Rule 12(b)(6)

■■■ In Florida, a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally privileged, even though the statement may be false and otherwise actionable. *Nodar v. Galbreath*, 462 So.2d 803, 809 (Fla.1984); *see also Axelrod v. Califano*, 357 So.2d 1048, 1050 (Fla. 1st DCA 1978)(*cited* by *Lewis v. Evans*, 406 So.2d 489, 492 (Fla. 2nd DCA 1981)). The Plaintiff has submitted evidence that Dr. Soifer made statements to Dean Makdisi and Dean Silver as part of

---

**3.** A corporation, such as St. Thomas University, Inc., has the capacity to sue and be sued. A division of a corporation, such as St. Thomas School of Law, is not a separate legal entity capable of suing or being sued. Plain-

tiff's argument that his contract is with the School of Law incorrectly assumes that the School of Law is a separate legal entity capable of suing or being sued.

an investigation into whether the Plaintiff presented a security threat to the School of Law community and/or its property. (Am.Compl.Ex. B.) Reviewing the facts in the light most favorable to the Plaintiff, there is no dispute that Dr. Soifer's comments were made as part of an investigation into accusations against the Plaintiff. The Courts finds that the remarks made by Dr. Soifer were privileged as a matter of law.[4] *See, e.g. Nodar*, 462 So.2d at 809.

■■■■■ Given that Dr. Soifer's remarks were privileged,[5] the Plaintiff must plead express malice[6] to proceed with his claim. Express malice has been defined by the Florida courts as "ill will, hostility *and* an evil intention to defame and injure (emphasis added)." *Lewis*, 406 So.2d at 492 (*citing Montgomery v. Knox*, 23 Fla. 595, 3 So. 211, 217 (1887)). The Florida courts have further stated, "the gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker." *Nodar*, 462 So.2d at 811, n. 8. Having carefully reviewed the facts alleged by the Plaintiff in his Amended Complaint, the Court finds no facts

alleging an improper motivation on the part of Dr. Soifer. In his Response, Plaintiff reasserts that Dr. Soifer acted "recklessly" and without any clinical evidence to support her opinion. Supra at 1263. These allegations do not amount to pleading that Dr. Soifer acted with malice, e.g. that she made false statements about the Plaintiff to Dean Silver and Dean Makdisi due to her hostility or ill will towards the Plaintiff. Accordingly, the Court dismisses with prejudice Counts 3 and 6.

### E. Motion to Dismiss Breach of Contract Claims (Count 1) Pursuant to Federal Rule 12(b)(6)

■■■■■ Under Florida law, a student and a private university have a contractual relationship. *John B. Stetson University*, 88 Fla. at 517, 102 So. at 640; *see also Sharick v. Southeastern University of Health Sciences, Inc.*, 780 So.2d 136, 138 (Fla. 3rd DCA 2000). It is also generally accepted that the terms and conditions of that contractual relationship may include the publications of the private university at the time of enrollment. *Sharick*, 780

---

4. The Plaintiff submitted *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), as authority for the argument that qualified privilege should be argued by the Defendants as an affirmative defense, rather than in a motion to dismiss. The holding in *Gomez* is not relevant to the instant Florida state law claims for defamation. In Gomez, the Supreme Court's holding was specific to its interpretation of federal statute, 42 U.S.C. § 1983.

The Plaintiff also submitted several defamation cases, *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F.Supp.2d 1334 (S.D.Fla. 1998); *Eastern Air Lines, Inc. v. Gellert*, 438 So.2d 923 (Fla. 3rd DCA 1983); *Barry College v. Hull*, 353 So.2d 575 (Fla. 3d DCA 1978). (D.E. 27, Plaintiff's Request for Judicial Notice Regarding Defendants' Motion to Dismiss.) Having reviewed each of the cases, the Court finds that none of the authority

provided by the plaintiff addresses defamation in the context of a claim for qualified privilege.

5. In Florida, a statement made subject to a qualified privilege is not defamatory, even though the statement may be false and otherwise actionable. Supra at 1268. Accordingly, it is not necessary for this Court to address the Defendants' additional argument that the statements made by Dr. Soifer were pure opinion and not actionable.

6. The Plaintiff improperly cites the definition of malice from *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The Supreme Court's definition of malice in the context of *New York Times v. Sullivan*, in which the Court addressed a defamation claim by a public figure, has not been adopted by Florida law in the instant contex. *See e.g., Lewis*, 406 So.2d at 492–493.

So.2d at 138. The university's publications are terms of an "implied-in-fact contract" rather than an express contract. *Id.*

▮▮▮ Under Florida law, the Plaintiff had certain contractual duties. A university may prescribe rules of conduct and students who enroll in that university impliedly agree to conform to the university's rules. *John B. Stetson University,* 88 Fla. at 516, 102 So. at 640. In the instant matter, St. Thomas University, Inc. has stated that, "a student shall not . . . threaten or harass any person." (Am. Compl. Ex. 2 at 41.) If the Plaintiff breached this rule of conduct, then the Plaintiff breached the implied contract between St. Thomas University, Inc. and himself. At this juncture, however, the facts stated in the Plaintiff's Amended Complaint and all reasonable inferences therefrom are taken as true. *Stephens,* 901 F.2d at 1573. This Court assumes therefore that Plaintiff never threatened any members of the Law School community or property thereof.

Under Florida law, the University had implied contractual obligations to the Plaintiff. Under the Code of Academic Integrity, the Plaintiff was advised that he would be afforded procedural protections prior to any decision by the University to expel him. These procedural protections included, but were not limited to, the right to know the allegations against him, the right to have those charges investigated by a disciplinary committee, and the right to make a statement at the opening and closing of a disciplinary hearing on his own behalf. Supra at 1262. Accordingly, the Plaintiff may proceed with a claim that the Defendants breached the terms of an *implied* [7] contract between himself and St. Thomas University, Inc.

### F. Motion to Dismiss Punitive Damages Claims (Counts 9, 10 and 11) Pursuant to Federal Rule 8(a) and 12(b)(6)

▮▮▮ Both Parties agree that Plaintiff's request for punitive damages is not an independent cause of action. Supra at 1263–64; see also FED. R. CIV. P. 8(a). Defendants further argue that the Plaintiff's claim for punitive damages in not warranted. Supra at 1263–64. In a diversity action, state law applies to punitive damages awards. *Dunn v. Koehring Co.,* 546 F.2d 1193, 1201 (5th Cir.1977); *see, e.g. Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1317 (11th Cir.2000). Florida law provides, pursuant to Fla. Statute § 768.72(1), that

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. Fla. Stat. § 768.72(1).

There is no evidence on the record to support punitive damages against either St. Thomas University, Inc. or against Dr. Soifer. The Court has found that the Plaintiff may proceed only against St. Thomas University, Inc. under a theory of implied breach of contract. Supra at 1269. Punitive damages are not available under Florida law for a claim of breach of contract. *John Brown Automation, Inc. v.*

---

7. For the purposes of Defendants' Motion to Dismiss, the Court agrees with the Plaintiff that the fact that the contract is implied is not dispositive. At the summary judgment stage, the fact that the Parties have only an implied contract, rather than an express contract, may have significance.

*Nobles,* 537 So.2d 614, 617 (Fla.App. 2 Dist.1988) (citations omitted).

### G. Dismissal Without Prejudice of Plaintiff's Amended Complaint Under Rule 10(a) and/or Rule 12(e)

Pursuant to this Court's analysis, the Plaintiff may proceed on a theory of implied breach of contract. Supra at 1269. Although Plaintiff is *pro se,* he is under a duty to comply with the Federal Rules of Civil Procedure in the form of his Second Amended Complaint. *See e.g., Wayne v. Jarvis,* 197 F.3d 1098, 1104 (11th Cir.1999). The Plaintiff's Amended Complaint, in its current form, is against a non-entity and it is in the form of a shotgun pleading. FED. R. CIV. P. 10(a); *see e.g., Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)(stating that plaintiff incorrectly filed complaint against Fortune Magazine, an internal division of the corporate entity, Time, Inc.); *see e.g., Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm.,* 77 F.3d 364, 366 (11th Cir.1996)(describing a complaint where each count adopted the allegations of all preceding counts as a impermissible "shotgun pleading"). In order to proceed with his claim of implied breach of contract, the Plaintiff must file a Second Amended Complaint. Pursuant to Rule 10(a), Plaintiff's Second Amended Complaint must be filed against St. Thomas University, Inc., a corporate entity capable of suing or being sued. FED. R. CIV. P. 10(a). Pursuant to Rule 12(e), Plaintiff's Second Amended Complaint must allege only the facts relevant to the breach of implied contract claim. FED. R. CIV. P. 10(a); *See e.g., Anderson,* 77 F.3d at 366.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. Defendants' Motion to Dismiss Amended Complaint (D.E.13) is **GRANTED IN PART and DENIED IN PART**, as set forth in the Body of this Order. The Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted as to Counts 2, 3, 4, 5, 6, 7 and 8, and those Counts are hereby dismissed with prejudice. The Defendants' Motion to Dismiss pursuant to Rule (b)(6) is denied as to Count 1. The Defendants' Motion to Dismiss for improper form is granted as to Count 1, and Count 1 is hereby dismissed without prejudice. The Defendants' Motion to Dismiss Counts 9, 10, and 11 is granted, and those Counts, construed as a request for relief in the form of punitive damages, are hereby dismissed.

2. The Plaintiff shall have **thirty (30) days** from the date of this Order within which to file a Second Amended Complaint, as set forth in the Body of this Order.

3. This case is **DISMISSED WITH PREJUDICE** as to Defendant Dr. Elizabeth Ann Soifer.