**AGNES McKINNA LEONARD, joined by her husband, N. C. LEONARD, v. JOHN F. WILSON.**

8 So. (2nd) 12                                    Division A
May 8, 1942

504

■■■■■■■■■■■■■■■

■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

Hodges & Barker, for plaintiffs in error.

Mabry, Reaves, Carlton & White and John S. Edwards, for defendant in error.

BUFORD, J.:

Plaintiff in error filed suit claiming damage occasioned by alleged libel. Judgment was in favor of defendant on directed verdict.

If the communication containing the alleged libelous matter or statement was a qualifiedly privileged communication and was made without malice, then plaintiff had no cause of action and the judgment was without error.

Defendant was a physician employed and directed to make a physical examination of plaintiff who was an employee of Federal Emergency Relief Administration.

Plaintiff submitted herself to the proposed examination and Dr. Wilson made what he reasonably considered the requisite examination to determine plaintiff's fitness for the work in which she was employed. After making the examination, defendant was directed by an officer of the organization who directed the examination to be made, to report to Conrad Van Hyning, the head of the Federal Emergency Administration in Florida, the result of the examination. This he did and in that report is found the alleged libel.

A careful reading of the record discloses no evidence from which malice may be inferred and if the communication was privileged the presumption is it was without malice. Coogler v. Rhodes, 38 Fla. 240, 21 Sou. 109; Abraham v. Baldwin, 52 Fla. 151, 42 Sou. 591; 10 L. R. A. (N.S.) 1051; Myers v. Hodges, 53 Fla. 197, 44 Sou. 357.

The general rule as to qualifiedly privileged communications is stated in 33 American Jurisprudence, 168-170, as follows:

"No. 173. Generally.—In acordance with the general principles already outlined, it appears to be clearly settled that a communication respecting the character of an employee or former employee is qualifiedly privileged if made in good faith by a person having a duty in the premises to one who has a definite interest therein. So long as good faith is present, the person making the statement is not limited to facts that are within his personal knowledge; but may, and should, pass on to his inquirer all relevant information that has come to him, regardless of whether he believes it to be true or not. But, of course, any such communication is actionable if made maliciously. While some courts restrict operation of the rule to statements made in response to inquiries, others hold that it applied just as fully to voluntary communications.

"Statements regarding the character and qualifications of applicants for positions in the public service have been held to be within the rule of qualified privilege—that is, they are not actionable if made in good faith and without actual malice.

"No. 174. By Whom Given.—While the character of privilege under consideration is frequently invoked

in respect of statements of employers and former employers, it is not confined thereto, but, on the contrary, appears to extend to the communications of all persons who may be under a duty to act in a particular case. Thus, the rule has been held to be applicable to statements made, not only by executive agents of the employer, such as the director of a corporation, the general manager of a mercantile establishment, or the supervisor of a chain of service stations, but also by employees of a lower rank, provided a duty rests on them to speak. Even a stranger may be privileged to make a statement reflecting upon the character of a person working for another, if he acts without malice and in obedience to a moral or social duty.

. "No. 175. To Whom Given.—As a general rule, a communication in respect of the character or qualifications of an employee or former employee may be made to any person who has a legitimate interest in the subject matter thereof, such as another employee, a prospective employer, a surety company or a public official. On the other hand, it has been held that a circular letter sent out by a firm of merchants to everyone whose name was on its address book, stating that the plaintiff was no longer in their employ and advising their friends and customers to give him no recognition on their account, is not privileged.

"When an employer makes a charge or accusation against an employee, the mere fact that a third person is present does not necessarily destroy the privilege.

"Persons Entitled to Privilege:

"No. 176. Generally.—Since the qualified privilege herein discussed is based on considerations of moral

and social duty, it cannot be restricted to the utterances or writings of any particular class or group, but, on the contrary, may be invoked by all persons who publish defamatory matter without malice and in furtherance of the welfare of society, generally, or of the legitimate interests of particular groups or individuals. Thus, as pointed out in other sections, any person who cares to do so may report public proceedings, comment on matters of general interest, or seek redress for a wrong done him, and so long as he proceeds without malice and does not exceed the privilege accorded, he cannot be held liable for any resultant defamation."

And in 36 C. J. 1242, it is said:

"Extent and Limits.—In General. In cases of qualifiedly privileged communications the law requires both an occasion of privilege and the use of that occasion in good faith. Whether the privilege is available as a defense may depend upon the circumstances of the particular case, the situation of the parties, the persons to whom, the circumstances under which, and the manner in which, the communication is made. A publication which in one case may be privileged, in another may not be. While ordinarily the question of privilege is determined by the occasion and not the language used and, hence, one may be privileged in imputing to another the commission of a crime, the privilege may depend not only upon the occasion that calls forth the publication but also upon the character of the communication itself.

"Subject Matter; Strangers.—A communication must be published in connection with, and relevant and germane to, some matter involving the interest

or duty. Communications not absolutely privileged may include fair reports of official proceedings; where defendant in good faith in the performance of a duty makes a communication to another to whom he owes a duty; and where one who has an interest in the subject makes a communication relating thereto to another having a corresponding interest. Notwithstanding the existence of a privileged occasion between the parties to a communication, an irrelevant defamatory statement concerning a third person having no connection whatever with the occasion is not privileged. But where a defamatory charge against a third person is inseparably connected with a privileged communication concerning another, it will be protected by the privilege.

"Duty or Interest. (1) Necessity—(a) In General. —To be privileged the communication must be by, and to, one who has a right, duty or interest in the subject. If there is no duty to perform or no interest the communication is not privileged; however, the communication may be privileged by reason of either interest or duty; and the duty need not be a legal one; it may be one of imperfect obligation, such as a moral or social one.

"Belief in Existence of Duty or Interest.—There is some authority, mostly in the form of dicta, to the effect that bona fide belief in the existence of the duty or interest may be sufficient to render the communication privileged; but in most of the cases where the question has been in issue it has been held that it is not sufficient that the maker or author had an honest and reasonable belief in the existence of the interest or duty; that is, good faith and honest or reasonable belief in the existence of the duty or

interest is not considered in determining whether the particular occasion is a privileged one. The duty or interest on which the privilege is founded must actually exist; the privilege depends, not on what the individual may have supposed to be his interest or duty, but upon what the court decides, as a matter of law, his interest or duty to have been. The court determines what is and what is not privileged. Some of the cases which appear to differ from the last rule stated may be explained by distinguishing the question of the fact of the existence of the duty from the question whether the particular communication comes within an existing duty. So it is held that, where a communication is made by one having a duty to perform, and it is made in good faith, in the belief that it comes within the discharge of that duty, it is privileged.

"Nature.—The nature of the duty or interest may be public, personal or private, either legal, judicial, political, moral or social. It need not be one having the force of a legal obligation; it may be one of imperfect obligation. The interest may arise out of the relationship or status of the parties. It has been admitted that when the privilege rests simply upon a moral or social duty there is much uncertainty and difficulty in applying the rules."

See also Harriott v. Plimpton, 166 Mass. 585, 44 N. E. 992. The case here under consideration comes well within the rule applicable to non-liability for the publication of a qualifiedly privileged communication.

Aside from this, however, we do not think that when the communication complained of is properly and reasonably construed, the language used constitutes the reflection upon planitiff's mentality which

plaintiff attributes to it. In fact, as we construe the offending statement, it constituted no reflection upon the character or mental status of plaintiff.

Having reached the conclusion above stated, it is unnecessary to discuss other questions presented in the briefs.

The record disclosing no reversible error, the judgment must be affirmed.

So ordered.

BROWN, C. J., WHITFIELD, and ADAMS, JJ., concur.