406 So.2d 489 (1981)
Shem LEWIS, Appellant/Cross Appellee,
v.
Robert EVANS and Industrial Concrete Industries, Inc., a Foreign Corporation, Appellees/Cross Appellants.
No. 80-95.
District Court of Appeal of Florida, Second District.
October 23, 1981.
Rehearing Denied December 8, 1981.
*491 Otto E. Halboth, St. Petersburg, for appellant/cross appellee.
Thomas H. McGowan, Gribbin, McGowan & Shoemaker, and Allen P. Allweiss, St. Petersburg, for appellees/cross appellants.
OTT, Judge.
At the repeated urging of city officials, appellee finally identified appellant as the construction inspector rumored to be "on the take." In this action for slander, the jury awarded appellant $12,000 compensatory damages and $28,000 punitive damages. The trial court cut the total judgment to $20,000 and denied appellee's motion for a new trial. Appellant challenges the remittitur and appellee attacks the judgment. We reverse the judgment and remand the case for a new trial.
Appellant correctly contends that a remittitur is error unless it is accompanied by an alternative grant of a new trial. The normal disposition on appeal, in such instance, would be to vacate the remittitur and let the original judgment stand. Dura Corp. v. Wallace, 297 So.2d 619 (Fla. 3d DCA 1974).
On his cross appeal, appellee argues that the judgment cannot stand because (1) he had a qualified privilege to make the statement concerning appellant, (2) appellant could overcome that privilege only by proving actual malice on appellee's part, and (3) appellant did not sustain that burden.
The United States Supreme Court is the font for most of the rules governing civil and criminal penalties for defamation, since freedom of speech and freedom of the press, guaranteed by the Federal Constitution, are directly affected. However, that Court has thus far confined its edicts to situations involving matters of "public interest," i.e., public officials, public figures,[1] and reports of matters of public record. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 1043-1044[12-15], 43 L.Ed.2d 328 (1975).
The right to privacy, which has been given increased recognition in recent years, cuts across certain aspects of the law of *492 defamation. Under statutory or constitutional provision in some states, truthful defamation may now be actionable,[2] depending upon whether a "public interest" is involved. Cox Broadcasting, supra, 95 S.Ct. at 1043-1044. However, it seems firmly settled that where a defamatory statement is false, the states are free to fashion their own standards for liability, so long as there is proof of fault on the part of the libeler and competent evidence of damages. Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 969[25], 47 L.Ed.2d 154 (1976).
In Florida, a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally privileged, even though the statement may be false and otherwise actionable. Axelrod v. Califano, 357 So.2d 1048, 1051 (Fla. 1st DCA 1978). The nature of the duty or interest may be public, personal or private, either legal, judicial, political, moral, or social. It need not be one having the force of a legal obligation; it may be one of imperfect obligation. The interest may arise out of the relationship or status of the parties. Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12 (1942). It is called a qualified or conditional privilege, because the libelous statement must be made in good faith, that is, with a good motive, and not for the purpose of harming the subject of the defamation. Drennen v. Washington Electric Corp., 328 So.2d 52, 55 (Fla. 1st DCA 1976).
We agree that the circumstances under which the statement here was made were such that a qualified privilege could arise. Appellee was a contractor furnishing cement to a public works project. Appellant was the inspector charged with accepting or rejecting the concrete on behalf of the city. The officials to whom and at whose request the statement was privately made were charged with responsibility by the municipality for investigating any such misconduct by city employees. The meeting at which the subject of the rumors concerning appellant was first broached was called by those officials to consider appellee's work-related complaints. Those circumstances clearly brought the matter within the ambit of the privilege sometimes referred to as a "qualified business privilege."
Where it has been established that defamation occurred on a privileged occasion, the claimant can recover only by sustaining the burden of proving that the libelous falsehood was uttered with malice.[3]Alexrod v. Califano, 357 So.2d 1048, 1050[9] (Fla. 1st DCA 1978). In other words, the mere fact that a defamatory statement was made does not imply that the speaker was motivated by malice if the statement was made on a privileged occasion, and therefore malice will not be presumed as a matter of law, even though the statement charges the commission of a crime or is otherwise defamatory per se. Under such circumstances the claimant cannot rely on implied malice, but must prove that the speaker was in fact motivated by malice, which is termed "express malice" to distinguish it from "implied malice."
Express malice, or malice in fact, as it is sometimes more aptly termed, traditionally has been defined as ill will, hostility, and an evil intention to defame and injure. Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). In modern times, a rule announced in New York Times v. Sullivan 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), has resulted in some confusion in terminology. *493 In that case the Supreme Court held that public officials can recover for defamation only if they prove "actual malice," which the Court then proceeded to define as actual knowledge that the defamatory statement is false or a reckless disregard for whether it is false or not. Such "reckless disregard" is manifested by making a statement with "a high degree of awareness of probable falsity." Holter v. WLCY-TV, Inc., 366 So.2d 445, 455 (Fla.2d DCA 1979).
Appellee lifts that rule from its "public official/figure" context and tries to engraft it into the qualified privilege concept. Thus, he argues that the instant judgment cannot stand because there was no evidence whatsoever that he knew the rumors about appellant were untrue, nor any evidence from which such conclusion could reasonably be inferred.
Appellee errs in assuming that the courts of this state, in considering the proof necessary to defeat a claim of qualified business privilege in an action involving only private individuals, must heed federal rules governing defamation of public figures. Just why the Supreme Court felt that those who defame public figures should be immune unless they know their publication is false probably involves first amendment considerations too intricate for mortal minds. We would venture an observation that the malicious publication of a falsehood is indefensible, and should be so regarded by the law, at least where privilege is not absolute. Proof that defamation is false, and was known to be such by the publisher, certainly establishes malice in fact, but that is by no means the only way to prove malice. Fortunately, however, we need not concern ourselves with such rarified constitutional considerations in the present case. Suffice it to say that we are not dealing here with public figures, but with private individuals, and therefore under the laws of this state appellant could defeat appellee's claim to qualified privilege by proving malice in fact, that is, by presenting evidence from which the jury could reasonably infer that appellee was motivated by ill will and a desire to harm him.
Therefore, while we agree with appellee that the record at bench contains little or no evidence[4] of "actual malice," as that term has been defined, we are unable to say that the record compels a finding of qualified privilege. There was evidence from which a properly instructed jury could have concluded that no privilege arose because appellee made the statement about appellant with an improper motive, i.e., to pay him back for repeatedly rejecting appellee's concrete, or to get rid of him and his interference with appellee's business interests. If we were convinced that the jury made any such tacit finding, we would not hesitate to affirm their verdict. But the question whether a verdict implies a certain finding is usually resolved by examining the jury instructions, and we find certain instructions here to be so misleading and confusing that we cannot say in good conscience just what the verdict means.
Although there were some instructions that correctly delineated and explained certain facets of the law of defamation in Florida, we believe the following language may well have misguided the jury and permeated the other instructions with uncertainty:
If the plaintiff is a public employee, it is necessary to prove malice. If you find an allegation of a crime was published, the statement is malicious, per se. Although you find the statement was libelous, per se, you will determine, also, *494 whether it was qualified privilege or not. For the plaintiff to prevail, the jury must find that the plaintiff proved the existence of malice. In connection with malice, to accuse another of a crime raises a presumption at law, of malice that they may be overcome by other evidence. Punitive damages, however, cannot be based upon this presumption.
Leaving aside the questionable reference to "public employees," which we have already addressed, the instruction discusses malice without distinguishing between implied and express malice, uses the phrases "libelous per se" and "malicious per se"[5] without defining them, talks about "qualified privilege" without saying what it is, and suggests (if not baldly states) that the "presumed malice" which arises from proof of an accusation of crime is sufficient to overcome a qualified privilege.
We think that under the particular facts of this case it was entirely proper for the court to let the jury determine whether appellee had a qualified privilege. However, we think that the jury should have been guided by a more informative instruction, perhaps along the following lines:
If you find that defendant made the alleged statement concerning plaintiff, and that the statement was false, then your verdict should be in favor of the plaintiff unless you find that the statement was privileged, in which case your verdict should be in favor of the defendant.
A statement made by a person having an interest in the subject matter thereof, or in reference to which such person has a duty, is conditionally privileged if made to another person having a corresponding interest or duty, even though the statement might prove to be false and would otherwise be actionable. The duty mentioned here may be legal, judicial, political, moral, or social. The condition of the privilege is that the statement must be made in good faith, that is, from a good motive, for the purpose of promoting or protecting the interest being discussed, and not for the malicious purpose of damaging the reputation of another.
A presumption of good faith arises when a statement is made under the described circumstances, but that presumption can be overcome if the plaintiff proves to your satisfaction that the statement was made with ill will, hostility, and an evil intention to defame and injure him.
We assume that at the retrial of this case the misunderstanding concerning "public employees" will not recur. Further, we see no reason to submit to the jury the question whether the statement was defamatory. It flatly accused appellant, a public servant, of taking bribes, which is a crime. § 838.016, Fla. Stat.
In suggesting such an instruction, we are not to be understood as limiting the trial court in its discretion and obligation to instruct the jury in accordance with the evidence which may be presented upon the retrial. We have no way of knowing what that will be, and thus we properly leave the matter of instructions to the discretion of the trial court. Our "suggestions" are simply and solely that.
In order to avoid misunderstanding at the retrial, we briefly address two other contentions urged by appellee. First, he makes a backup argument that in any event he couldn't be liable because he proved that his statement was true, i.e., there indeed were rumors about appellant circulating in the public works department. In the first place, as already noted, truth is not always a sufficient defense in Florida. In the second place, it is well settled that repetition of libel per se is actionable, even though the libeler explicitly refuses to vouch personally for its verity. Layne v. Tribune Co., 108 Fla. 177, 146 So. 234 (1933). Naturally, the particulars of such rumors, and precisely how they came to appellee's attention, would be admissible on the issue of his motive and good faith in repeating them.
*495 Appellee also asserts that one who merely answers the questions of another interested party can never be liable for slander. We disagree. Initial reticence to name the person being maligned is a classic ploy, invariably overcome by the insistent importuning of the listeners. We are not saying that is what happened here, but the possibility precludes the hard and fast rule urged by appellee.
What we have already said is dispositive of this appeal. Accordingly, we need not discuss appellant's violation of the prohibition against "golden rule" argument. We are confident it will not recur at the retrial.
The judgment is REVERSED and the case REMANDED for further proceedings consistent with this opinion.
HOBSON, Acting C.J., and BOARDMAN, J., concur.
NOTES
[1] Inexplicably, appellant conceded in the trial court that his position as a municipal employee subjected him to the burden of proof required of public officials, namely, that the defamation was uttered with "actual" malice. In New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court expressly abstained from formulating criteria distinguishing public employees from public officials. Id., 84 S.Ct. at 727, n. 23. Our own supreme court has said that public officers are those persons to whom a portion of the sovereign power has been delegated, whereas public employees neither hold nor are authorized to exercise in their own right any sovereign power or any prescribed independent authority of a governmental nature. State v. City of Miami, 153 Fla. 90, 13 So.2d 707 (1943). It is highly questionable whether a public works inspector, whose authority is limited to determining whether materials and services furnished the city meet certain prescribed minimum standards, could ever be classified as a public official.
[2] In Florida, truth is not always an absolute defense to defamation. In order to avoid liability, a "good motive" must also be shown. Art. I, § 4, Florida Constitution. But see 16 Stanford Law Review 789, questioning the constitutional validity of such restrictions on the defense of truth in defamation cases.
[3] At first blush it might seem that the one who claims qualified privilege would bear the burden of proving good faith, since that is the essential element needed to perfect the defense of privilege. The rationale, however, is that proof of privileged occasion, or prima facie proof of privilege, as it is sometimes called, raises a presumption of lack of malice and places upon the claimant the burden of proving malice in fact. Appell v. Dickinson, 73 So.2d 824 (Fla. 1954).
[4] Appellee seizes upon certain language in Cape Publications v. Adams, 336 So.2d 1197 (Fla. 4th DCA 1976) and asserts that proof of actual malice must have "convincing clarity." We note that the author of Cape took that phrase from New York Times v. Sullivan, supra. We are satisfied that neither Cape nor New York Times intended to change the "preponderance of evidence" rule. Substantial evidence which convinces the trier of fact obviously has "convincing clarity." There is no known requirement that appellate courts must also be convinced by the clarity of the evidence, so long as it is substantial, nor do we know of any rule requiring us to treat the sufficiency of evidence of malice any different from evidence presented on any other issue in a civil case.
[5] The Florida Supreme Court Commission on Standard Jury Instructions recommends against the use of such terms. See Comment to MI 4.1, Florida Standard Jury Instructions.