[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10742
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cv-81975-BB


MATT FRIEDMAN,
an individual,
SCALE MEDIA INC.,
a New York corporation,

                                                            Plaintiffs - Appellees,

versus

NICHOLAS SCHIANO,
d.b.a. HotWireMedia.com,
M&M ENTERTAINMENT, INC.,
a Florida corporation,
BARMITZVAHS.COM, INC.,
a Florida corporation,

                                                            Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 7, 2019)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

This appeal stems from the district court's refusal to vacate an approximately $1.3 million default judgment. The appeal turns on two issues: (1) whether the defendant was properly served, and (2) whether the defendant had good cause for failing to appear. The district court found, as a factual matter, that the defendant was properly served. It further refused to set aside the default judgment after concluding the defendant, despite knowing about the lawsuit, had not adequately explained his months-long failure to contact the court. We affirm.

## I.

## A.

On December 8, 2016, Matt Friedman and his company, Scale Media, Inc., sued Nicholas Schiano and his companies, M&M Entertainment, Inc. and Barmitzvahs.com, Inc.[1] Friedman asserted two causes of action, one common law (defamation *per se*) and one statutory (violation of the Florida Deceptive and Unfair Trade Practices Act). Friedman alleged that Schiano posted defamatory messages on numerous websites, using words like "fraud," "scam," or "crime" over 325 times to describe Friedman. Attached to the complaint were numerous

---

[1] As will become clear, the relevant parties are Friedman and Schiano. For ease, and because the two individuals had complete control over the other parties in this case, we generally refer only to the individuals.

instances of Schiano's alleged defamation, including a screenshot of the Scale Media webpage on which Schiano had superimposed a large warning sign that said "SCAM" and the message "SCAMS ARE CRIMES | HELP STOP THEM." Friedman contended Schiano had falsely accused him of credit card fraud, cybercrimes, Internet scams, phone sales fraud, theft, and hacking Schiano's website. As Friedman later explained at a hearing, "Schiano was essentially able to flood the Internet with so many of these defamatory websites that if anyone Googled [Friedman's] name . . . all they would see would be fraud and scam alerts." The root of this animus? As Friedman tells it, the two men had previously worked together, and when Friedman left to start his own related business, Schiano did not take kindly to the competition.

Schiano did not answer or otherwise respond to the complaint. On January 6, 2017, the district court clerk entered a default against him. *See* Fed. R. Civ. P. 55(a). On the day of the default, the district court entered a preliminary injunction, making findings of facts that Schiano's statements constituted defamation *per se* and requiring all defamatory messages be removed. Friedman moved, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure,[2] for a final default judgment.

---

[2] Rule 55(b)(2) provides that if the plaintiff does not seek a sum certain, he must apply to the court for a default judgment. The court may then "conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

The district court granted that motion and entered a final default judgment against Schiano (and made its preliminary injunction permanent) on January 17, 2017.

On March 2, 2017, the district court held a hearing on damages. At that hearing, Friedman informed the court that, although some of the websites had been taken down, some websites remained live; Friedman was working with third-party providers to take them down. Friedman testified that after he left to compete with Schiano, Schiano "went berserk. When he found out that we had opened our own company, his immediate reaction was to call me, my family, my mom, my dad, my brother, harass us, telling us that he was going to destroy our lives, telling me he was going to pay me a visit and hurt me." Friedman also played a voicemail message left by Schiano in which he said:

> [Y]ou can be sure I'm a f—ing hell of a lot better at getting number one results in f—ing Google then you'll ever be. . . . I'm a f—ing millionaire. I'm f—ing semi-retired. I got nothing better to do than all day now to stay on the f—ing Internet and ruin your f—ing life.

Schiano also asserted, in this voicemail and another, that he was forwarding information to the police. Friedman further testified that Schiano would post pictures of his family members (including his one-year old nephew), his parents' addresses (including when they moved), and his bank account information. As he put it, "There's not anytime I get together with my family or anytime I see anybody and this isn't what they talk about. Every time, they ask me." Schiano's remarks about Friedman came up when anyone Googled Friedman's name,

4

Friedman said, so he lost out on dates, friends, and business. In fact, Friedman said, Schiano's conduct resulted in Friedman closing his party-planning business completely.

On April 28, 2017, the district court entered a judgment on damages,[3] fees, and costs, awarding Friedman $640,000 in compensatory damages and $640,000 in punitive damages.[4] Pursuant to Fla. Stat. § 501.2105, the court also awarded attorneys' fees and costs in the amount of $30,535.08. The court expressly found that Friedman had submitted "clear and convincing evidence . . . of intentional misconduct sufficient to support an award of punitive damages." The court credited the testimony recounted above. It further found, as a matter of fact, that Schiano had committed at least 64 separate instances of defamation, posting on at least 30 different websites and defaming Friedman to at least 34 individuals.

## B.

On March 23, 2017—before the damages award but well after the final default judgment order—Schiano sent an email to the court. The email began: "I did not receive notice of this law suit. I do not live at my home of record. I rent my home to 3 different strangers." He explained that he had learned of the lawsuit

---

[3] The court limited the damages award to the defamation cause of action; to prevent the possibility of double recovery, it did not permit recovery under the Florida Deceptive and Unfair Trade Practices Act, as any damages would have arisen from the same harmful conduct.

[4] Fla. Stat. § 768.72 authorizes punitive damages in cases involving "intentional misconduct or gross negligence."

only because his email account had been shut down by the court's injunction. He asserted the things he posted online were true and insisted that "Friedman has committed slander on me, not me on him." Indeed, Schiano claimed Friedman had falsely accused him of child molestation, rape, and drug addiction. He also asserted "extreme financial hardship" and inability to afford an attorney. Nevertheless, he requested "an appearance in court and an appeal to your January 6, 2016 order" (the preliminary injunction).[5]

On May 19, 2017, Schiano, through counsel, filed a motion under Rule 60 of the Federal Rules of Civil Procedure to vacate the default judgment and judgment on damages and fees. To explain his late arrival to the case, Schiano contended he was never properly served. The returns of service showed that the complaints and other documents were served on Katya Skripova, a resident of 3840 NE 17th Avenue, Oakland Park, Florida 33334 ("3840").[6] Schiano claimed in his Rule 60 motion, and still does on appeal, that Skripova is a "virtual stranger" who happened to be his tenant at 3840. Schiano asserted that "Skripova is a Russian immigrant who speaks only broken English." At the time of service, Schiano claimed, he resided with his girlfriend at a different property. In addition, Schiano

---

[5] It is worth noting that although Schiano later said he was an "internet guy" who never checks his physical mail, he also "claimed that he never received [Friedman's] November 23, 2016 demand letter because it was sent to his 'spam' email, which he claims to never check."

[6] Schiano is the registered agent of both corporate defendants, M&M Entertainment, Inc., and Barmitzvahs.com, Inc., and 3840 was the address of service for both corporations.

made various arguments that he again presses on appeal and that we address below.

The motion to vacate was fully briefed. As part of that briefing, Friedman submitted an affidavit from the process server. The process server averred that he confirmed 3840 was Schiano's usual place of abode. He "specifically asked Ms. Skripova whether Mr. Schiano resided at [3840] on the date of service. She confirmed that he did." When he asked whether Schiano was home, "Skripova explained that while Mr. Schiano currently lived at [3840] with her that he was not home at the moment, but was expected to return home later that afternoon." And "[w]hile Ms. Skripova had a slight foreign accent, it was apparent that she fully understood and comprehended our discussion and the representations she was making regarding Mr. Schiano residing at" 3840. Thus, the process server believed Skripova understood when he explained "the nature of the documents being served on her for Mr. Schiano," and he believed her when "she confirmed she would deliver them to Mr. Schiano."

After briefing and oral argument (at which Schiano testified), the district court denied the motion to vacate the default judgment. The court first explained that, despite Schiano's request, Rule 55(c) of the Federal Rules of Civil Procedure was an improper basis for vacating the judgment. That Rule provides, "The court may set aside an entry of default for good cause, and it may set aside a final default

7

judgment under Rule 60(b)." Although the clerk had automatically entered a default in the case, the court had directed the clerk to enter a default *judgment*, which Rule 55(c) itself says is evaluated for vacatur under Rule 60(b). Thus, the court explained, Schiano needed to meet one of the six bases for relief under Rule 60(b).[7] The court noted two of those bases potentially applied here: the judgment being void for lack of personal jurisdiction (Rule 60(b)(4)), or "mistake inadvertence, surprise, or excusable neglect" (Rule 60(b)(1)).[8]

With respect to Rule 60(b)(4) and personal jurisdiction, the court found Schiano had been properly served. Because the verified returns of service were valid on their face, the court found that Schiano bore the burden under Florida law of proving by clear and convincing evidence that 3840 was not his usual place of abode at the time of service. The court concluded he did not meet that burden. Although Schiano and his girlfriend submitted affidavits and Schiano testified he

---

[7] The six bases are: (1) "mistake, inadvertence, surprise, or excusable neglect;" (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);" (3) "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;" (4) "the judgment is void;" (5) "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;" and (6) "any other reason that justifies relief."

[8] The court explained that a "party [] cannot seek relief under both Rule 60(b)(1) and Rule 60(b)(6)," the Rule's "catch-all provision." *See Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) ("Although 60(b)(6) provides a residual equitable authority for vacating judgments, this Court consistently has held that 60(b)(1) and (b)(6) are mutually exclusive.").

had not been living at 3840 during the relevant time, the court expressly found the evidence was not credible.

Rather, evidence in the record indicated Schiano was aware of the lawsuit in January of 2017. For example, a January 17, 2017, email from a webhost asked Schiano to remove sites named in the court order—an email to which Schiano responded the same day.  Schiano also received an email on February 16, 2017, that confirmed receipt of a fax Schiano had sent the day before regarding the "legal lock" on Barmitzvahs.com.  "Thus, not only was Schiano well aware of the Court's orders and injunctions, he was actively emailing his service providers and inquiring about what he could do about them."  In contrast, the court found "no reason to doubt the veracity of the process server's affidavit or the statements of Ms. Skripova contained within them."  Summarizing, the district court noted that although Schiano offered "self-serving affidavits and testimony to support Schiano's position that he did not live at [3840] at the time of service, the Court finds that such evidence lacks credibility in light of other, objective evidence in the record that suggests [Schiano] had knowledge of the lawsuit as early as January 2017."

With respect to excusable neglect pursuant to Rule 60(b)(1), the court examined the totality of the circumstances.  It noted that Schiano would suffer serious financial loss, which weighed in his favor.  But the court also noted that it

9

had calculated the damages following notice and a full evidentiary hearing, so it rejected Schiano's claim he would prevail on the merits. Schiano continued to support his truth defense only through his own conclusory assertions in his March 23, 2017, email to the district court. The court further explained that Friedman would suffer prejudice if the judgment were vacated, as "setting aside the Court's orders and judgments would result not only in re-litigating the case, but also in the reactivation of at least thirty defamatory websites that this Court has already found caused [Friedman] reputational and monetary harm." Finally, for reasons recounted above, the court also concluded Schiano had not given good cause for failure to make a timely appearance. Beyond service of the complaint, Friedman sent copies of the following to 3840: motion for entry of clerk's default; motion for preliminary injunction; motion for default judgment; motion for contempt; and supplemental memorandum on damages. From the date of service, it took Schiano over three months to contact the court and over five months to file his motion; from the date of the January 17, 2017, email to the webhost, it took Schiano more than two months to reach out to the court and more than four months to file the motion; and from the date of the February 15, 2017, fax, it took Schiano over a month to reach out to the court and more than three months to file the motion. In any of the scenarios, the court found the delay was not excusable.

The district court also found it notable that Schiano "represented to various government agencies" that 3840 was his address and the address of the registered agent of the corporate defendants.  Active filings with the Florida Department of State indicated that 3840 was the "principal place of business, registered agent address, and mailing address" of the corporate defendants.  As recently as "February 7, 2017, Schiano named himself the registered agent for BarMitzvahs.com, Inc. and specified [3840] as the mailing address for the corporation and the registered agent."[9]  As the registered agent for the corporate defendants "Schiano had, and continues to have, an obligation to keep the authorities apprised of the registered agent and registered office for service, and to be available for such service."

The court concluded: "To vacate the judgments even though [Schiano] make[s] a hollow claim that [he] did not receive mail at [his] last known address would be to reward [him] for [his] failure to adhere to [his] obligations."  Thus, the court found no excusable neglect and declined to vacate the judgment.

---

[9] "What's more," said the district court, "in two separate filings with the Broward County Property Appraiser, Schiano provided [3840] as his personal mailing address. . . .  In fact, Schiano claimed [3840] as his legal homestead, a status for which he obtained tax benefits from. . . .  A warranty deed executed in February 2017 also shows that Schiano identified [3840] as his then-current address.  Corporate Defendants, and Schiano in particular, cannot expect to hold [3840] out to the public to be their legal address—and receive benefits from doing so—without accepting the concomitant responsibilities."

Schiano then moved to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure—a request the district court denied in a written order.  This appeal followed.

## II.

Schiano first challenges the default judgment, asserting it is void for lack of valid service of process and lack of personal jurisdiction.

## A.

"We review the district court's ruling on a Rule 60(b)(4) motion to set aside default judgment for voidness de novo."  *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1337 (11th Cir. 2015).  We review for clear error any factual findings regarding sufficiency of service.  *See* Fed. R. Civ. P. 52(a)(6);[10] *Prewitt Enters., Inc. v. Org. of Petrol. Exporting Countries*, 353 F.3d 916, 920 (11th Cir. 2003).  "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

---

[10] "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."  Fed. R. Civ. P. 52(a)(6).

**B.**

Rule 4(e) of the Federal Rules of Civil Procedure governs service of process within a judicial district of the United States.  Under Rule 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  In this case, that state is Florida, whose service-of-process statute provides, "Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents."  Fla. Stat. § 48.031(1)(a).  A corporation may be served by serving its registered agent.  *Id.* § 48.081(3)(a).  "If the address for the registered agent . . . is a residence . . ., service on the corporation may be made by serving the registered agent . . . in accordance with s. 48.031."  *Id.* § 48.081(3)(b).

The process server served Schiano via substitute service on his tenant, Skripova.  Schiano makes much of the fact that Skripova was merely a "rental tenant" who had no relation to him or his corporations.  But the Florida statute requires only that service be effected on "any person," 15 years of age or older,

13

"residing" at the defendant's usual place of abode. Fla. Stat. § 48.031(1)(a).[11]  A tenant, unlike a temporary houseguest, is a person "residing therein" for purposes of the statute. *Cf. Magazine v. Bedoya*, 475 So. 2d 1035, 1035 (Fla. 3d DCA 1985) (holding a six-week visit was long enough to be a "person residing therein" for purposes of § 48.031(1)(a)).

The question, then, is whether 3840 was Schiano's "usual place of abode"— where he physically lived at the time of service. *See Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 956 (Fla. 2001).  "While a plaintiff bears the ultimate burden of proving valid service of process, a 'return of service that is regular on its face is presumed to be valid absent clear and convincing evidence presented to the contrary.'"  *Robles-Martinez v. Diaz, Reus & Targ, LLP*, 88 So. 3d 177, 179 (Fla. 3d DCA 2011) (quoting *Telf Corp. v. Gomez*, 671 So. 2d 818, 818 (Fla. 3d DCA 1996)) (internal citation omitted).  "Regular on its face" means the return of service attests to all the information required by the service statute.  *See id.* at 180. This information includes a defendant's usual place of abode.  *See id.*; *Busman v. State, Dep't of Revenue*, 905 So. 2d 956, 957–58 (Fla. 3d DCA 2005) (requiring

---

[11] The statute previously required substitute service on "some person of the family over fifteen years of age."  *See Wakeman v. Farish*, 356 So. 2d 1323, 1324 (Fla. 4th DCA 1978) (quoting Fla. Stat. § 48.031 (1975)).  That the Florida Legislature amended it to say "any person" severely undermines Schiano's argument.

defendant to present clear and convincing evidence that place of regular-on-its-face service was not usual place of abode).

The returns in this case were regular on their face: they named Schiano (in his individual capacity or as a registered agent); they stated the documents that were delivered; they identified Skripova as a co-resident 15 years of age or older to whom the documents were delivered; and they listed 3840 as Schiano's usual place of abode. The burden thus shifted to Schiano to invalidate the returns via clear and convincing evidence.

Clear and convincing evidence "must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983). Under this exacting standard, we cannot say the district court clearly erred in concluding that Schiano failed to prove that 3840 was not his usual place of abode.

"The burden of proof in a Rule 60(b)(4) motion rests with the defendant." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1298–99 (11th Cir. 2003). As Schiano admits, the only affidavits regarding where Schiano lived at the time were his and his girlfriend's. But the district court expressly found the affidavits not credible. In particular, the court found that "not only was Schiano well aware of the Court's orders and injunctions, he was actively emailing his service providers

15

and inquiring about what he could do about them." "On the other hand, the Court has no reason to doubt the veracity of the process server's affidavit or the statements of Ms. Skripova contained within them." These findings are due significant deference, in light of our standard of review and what Florida law requires Schiano to produce in order to invalidate the return of service.

Schiano says the process server's post-service affidavit was "dubious" on its face. He speculates that the process server did not have enough time to evaluate whether Skripova understood the nature of the documents.[12] But the district court did not need to agree with that speculation, nor did it need to agree with the unsupported, contested assertion that Skripova spoke only "broken English." Likewise, Schiano's argument that Skripova's status as a tenant "clearly and convincingly" shows 3840 was not Schiano's usual place of abode because "very often when an owner rents out his or her property the owner resides somewhere else" is unsupported and unconvincing.

Schiano also suggests the evidence he presented was "unimpeached." To the contrary, Friedman submitted a plethora of evidence in support of his contention that 3840 was Schiano's usual place of abode, and Schiano's driver license—issued on November 16, 2016, 26 days before service—listed 3840 as his

---

[12] Schiano states the affidavit was based on hearsay from declarant Skripova, although he does not seem to argue that the hearsay itself invalidates the affidavit.

address.  The district court further noted that a "warranty deed executed in February 2017 [] shows that Schiano identified [3840] as his then-current address." Schiano also identified 3840 as his homestead and received concomitant tax benefits.[13]  And "in two separate filings with the Broward County Property Appraiser, Schiano provided [3840] as his personal mailing address."  The corporate defendants' "active filings with the Florida Department of State indicate that [3840] is their principal place of business, registered agent address, and mailing address."  Accordingly, Schiano's evidence was not "unimpeached."

---

[13] Schiano argues in Part I of his reply brief that Friedman took the opposite position on Schiano's homestead in bankruptcy proceedings, which Schiano initiated in January of 2018. Specifically, Schiano contends the trustee took the position, which Friedman joined, that Schiano was not living at 3840 but was instead living with his girlfriend.  Schiano says we should judicially estop Friedman from taking a contrary position in this proceeding.  As a threshold matter, the bankruptcy court authorized Schiano to pursue this appeal, relieving him from the automatic stay.  *See* Doc. 22 at 2, No. 18-10928-JKO (S.D. Fla. Bankr.).  As to Schiano's argument, the time periods in the two cases are different, and the "conflict" in positions is nebulous at best.  In a May 16, 2018, meeting of creditors, Schiano claimed to be living at 3840. *See* Doc. 116 at 14, No. 18-10928-JKO (S.D. Fla. Bankr.).  He also said that he was living there when he filed for bankruptcy but that, in the preceding months, he "could have been living" at 3840, or he "could have been living with [his] girlfriend" because he goes "back and forth."  *Id.* at 17–18.  What matters here is whether he lived at 3840 at the time of service in this lawsuit: December 12, 2016.  These portions of the bankruptcy proceedings do not shine any further light on that issue or on Friedman's position on it.

But all of that is beside the point.  We decline to consider Schiano's estoppel argument as it was raised for the first time in Schiano's reply brief.  "It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief."  *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987).  Schiano filed his initial brief on August 6, 2018.  Yet Friedman took his allegedly inconsistent position on July 12, 2018. *See* Doc. 125 at 1, No. 18-10928-JKO (S.D. Fla. Bankr.).  In addition, the district court considered the homestead issue in its order, and as Schiano himself points out, Friedman argued the issue strenuously in the district court.  Schiano therefore could have made his judicial estoppel argument in his initial brief.  That Friedman pressed the homestead issue in his response brief did not "open the door," as Schiano argues, for him to introduce evidence of separate proceedings in his reply.

17

Nevertheless, that Schiano plainly knew of the lawsuit in January of 2017 does not obviate the need for proper service.  Although service of process is about notice, even defendants who otherwise acquire notice still have a right to be properly served.  Cf. *McDaniel v. FirstBank Puerto Rico*, 96 So. 3d 926, 928 (Fla. 2d DCA 2012) (quoting *Shurman*, 795 So. 2d at 954) ("Because of the fundamental constitutional implications of service of process, 'statutes governing service of process are to be strictly construed and enforced.'").  But the district court did not solely rely on Schiano's knowledge of the lawsuit.  The court was entitled to credit the process server's affidavit and the documentary evidence against Schiano, and it was allowed to discredit Schiano's testimony, especially in light of its viewing it firsthand.  *See Anderson*, 470 U.S. at 575.  It analyzed the record and concluded Schiano did not carry his heavy burden of rebutting the facially valid return of service with clear and convincing evidence.[14]

The district court's judgment is not void, and we therefore affirm the district court's denial of Schiano's Rule 60(b)(4) motion.

**III.**

---

[14] The district court erroneously stated, offhand, that Schiano did not contest Skripova's status as a co-resident, a point on which Schiano spends three pages of his initial brief.  But the error is meaningless because the district court considered the other evidence and concluded that Schiano did, in fact, reside at 3840—which would have made him Skripova's co-resident.

18

Schiano also contends the district court erred in not finding good cause to excuse his default. He contends the district court should have applied Rule 55(c) instead of Rule 60(b)(1).

## A.

"We review the district court's denial of a Rule 60(b)(1) motion to set aside a default judgment for excusable neglect for an abuse of discretion." *Architectural Ingeneria*, 788 F.3d at 1338. We also review for abuse of discretion a denial of a motion under Rule 55(c). *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

## B.

## 1.

Schiano contends the district court should have construed his March 23, 2017, email as a motion to vacate the judgment. If the court had done so, the argument goes, the "motion to vacate" would have been entered before the court's final judgment on damages. Thus, the court would have evaluated the motion under Rule 55(c), whose "good cause" standard is more lenient than Rule 60(b)'s "excusable neglect" standard.[15]

---

[15] Nevertheless, Schiano relies heavily on our unpublished decision in *Safari Programs, Inc. v. CollectA International Limited*, 686 F. App'x 737 (11th Cir. 2017), a Rule 60(b) case. There, we explained that "the district court abused its discretion by failing to consider all relevant factors and by failing to properly evaluate the factors that it did consider." *Id.* at 744. We found that the district court failed to consider relevant precedent. *Id.* Here, the district court evaluated all relevant Rule 60(b) factors, and even distinguished the *Safari* opinion in denying

19

Schiano relies chiefly on *Dassault Systemes, SA v. Childress*, 663 F.3d 832 (6th Cir. 2011), where the Sixth Circuit explained that its precedents require a court to determine damages before entering a final default judgment. *Id.* at 839. Here, the district court clerk entered a default on January 6, 2017, and the district court entered its final default judgment on liability, along with its permanent injunction, on January 17, 2017. But the judgment determining damages and fees was not entered until April 28, 2017—more than a month after Schiano's March 23, 2017, email.

We need not decide which of the district court's judgments was truly "final" so as to trigger Rule 60(b). Nor do we need to decide whether the district court abused its discretion in declining to consider the March 23, 2017, email as a motion to vacate. The reason is simple: Schiano fails to show good cause under Rule 55(c), let alone excusable neglect under Rule 60(b). *Cf. Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001) ("We [] need not decide whether

---

Schiano's Rule 59(e) motion. Our own review convinces us that *Safari* is indeed distinguishable. For instance, in Safari, the "foreign defendant unfamiliar with litigation in United States courts" sent a letter to the court one day after the clerk entered a default. *Id.* at 741, 745. Here, Schiano—a domestic defendant who had long been aware of the litigation—sent an email two and a half months after the clerk entered the default. *Cf. Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007) ("The longer a defendant—even a foreign defendant—delays in responding to a complaint, the more compelling the reason it must provide for its inaction when it seeks to set aside a default judgment."). More importantly, in *Safari*, the defendant "contended that the judgment should be reopened . . . because [the plaintiff's] filing of a duplicative lawsuit against [the defendant] . . . was confusing and led [the defendant] to believe that [the plaintiff] had abandoned the first case and intended to proceed with the second." 686 F. App'x at 741. Nothing similar happened here.

Rules 15(a) and 59(e)'s more lenient standard applies to this *pro se* Rule 60(b) motion: Plaintiff cannot even satisfy the Rule 15(a) abuse of discretion standard, much less the more stringent Rule 60(b) standard.").

Before we address that point, we note some problems with Schiano's email-as-a-motion theory. "[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'" *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)). An ex parte email sent directly to a district judge is not an accepted method of filing a motion under Rule 5 of the Federal Rules of Civil Procedure or under Rule 5.1 of the Local Rules of the United States District Court for the Southern District of Florida. Indeed, Rule 5(a)(1)(D) of the Federal Rules of Civil Procedure requires motions, except those that may be *validly* heard ex parte, to be served on every party in a case. Moreover, the March 23, 2017, email cannot be interpreted as a "motion" on behalf of the corporate defendants because it is well settled that corporations may appear only through attorneys. *See Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 830 (1824) ("A corporation, it is true, can appear only by attorney. . . ."); *accord Szteinbaum v. Kaes Inversiones y Valores, C.A.*, 476 So. 2d 247, 248 (Fla. 3d DCA 1985) ("It is well recognized that a corporation, unlike a natural person, cannot represent itself and cannot appear in a court of law without an attorney.").

21

The district court stated that "the Court informed [Schiano] following his email that the corporate Defendants could not file responses without representation." Schiano refers to the district court's characterization as "a blatant misstatement of fact." In support of this truculent assertion, Schiano emphasizes his testimony that the clerk's office, not the judge, told him the corporate defendants needed to be represented. Schiano suggests that it is somehow significant that the courthouse staff and not the district judge told him that the corporate defendants must be represented. Regardless, because Schiano does not contest he had been expressly warned, we are not persuaded.

**2.**

Nevertheless, even if we were to conclude the district court abused its discretion in not construing Schiano's email as a motion to vacate, Schiano still would not prevail on such a motion because he fails to demonstrate good cause.

Under Rule 55(c), a district "court may set aside an entry of default for good cause . . . ." "We recognize that 'good cause' is not susceptible to a precise formula, but some general guidelines are commonly applied. Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana*, 88 F.3d at 951 (citation omitted). "[I]f a party willfully defaults by displaying either an intentional or

reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951–52.

First, Schiano has not demonstrated he had a meritorious defense.[16]  Schiano continues to insist on appeal that he had a valid truth defense to the defamation claim.  Yet he supports this assertion by citing only to contested documentary evidence, including attachments to Friedman's complaint—items the district court expressly found defamatory as a matter of fact.  An appellant "cannot establish a meritorious defense simply by pointing to an alternate interpretation of [] testimony." *In re Worldwide Web Sys.*, 328 F.3d at 1296–97.  It follows that an appellant cannot establish a meritorious defense simply by pointing to factual evidence already considered and rejected by the district court.  There must be *some*

---

[16] The parties argue over whether truth is an absolute defense to defamation under Florida law.  Florida's Constitution provides, "In all criminal prosecutions and civil actions for defamation the truth may be given in evidence.  If the matter charged as defamatory is true *and* was published with good motives, the party shall be acquitted or exonerated."  Fla. Const. art. 1 § 4 (emphasis added).  Florida courts, as we have previously noted, have interpreted this provision to mean that truth is not an absolute defense in a defamation action; "good motives" are also required. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989) ("In Florida, truth is not always an absolute defense to defamation. In order to avoid liability, a 'good motive' must also be shown." (quoting *Lewis v. Evans*, 406 So.2d 489, 492 n.2 (Fla. 2d DCA 1981)); *see also id.* ("Armstrong does not assert that the evidence was insufficient for the jury to conclude he acted with ill will.").  Schiano responds pointing to an unpublished federal district court case in which the court opined that "[s]ubstantial truth is a complete defense to defamation, regardless of the motives of the defamer.  It is a common tenet of First Amendment law that true statements are inactionable." *Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2014 WL 5474061, at *11 (S.D. Fla. July 10, 2014).  In light of *Finch*, the *Carroll* court incorrectly remarked that the "good motive" requirement "is not recognized" by the federal courts.  Nevertheless, we need not resolve this potential constitutional conflict.  We simply note that the district court found Schiano's "defamation of Plaintiffs was malicious and committed with the specific intent of causing harm to Plaintiffs."

23

analysis demonstrating why the district court erred. Such analysis is absent here. The district court correctly concluded that Schiano failed to make the required "affirmative showing of a defense that is likely to be successful." Doc. 108 at 14 (quoting *In re Worldwide Web Sys.*, 328 F.3d at 1296).

The district court was also correct in concluding that Friedman would be prejudiced if it set aside the default judgment. As the court explained in its November 14, 2017, order, "It has been almost a year since Plaintiffs filed their Verified Complaint. While Defendants were idle, Plaintiffs and the Court devoted significant time and resources in adjudicating Plaintiffs' substantive claims." The court was, however, incorrect in stating that the defamatory websites it had enjoined would necessarily be reactivated if the default judgment were set aside; the court could have reinstated its preliminary injunction. But that issue is tangential to the real prejudice Friedman would suffer: the cost of relitigating a matter already decided when Schiano has offered no new evidence and no excuse for his months-long delay in failing to appear. Indeed, Schiano *still* fails to offer a good reason for his failure to timely appear. Schiano learned of the lawsuit by January 17, failed to file anything with the court until March 23, and offered no reason for the delay. We note that it would be perfectly reasonable to conclude that Schiano exhibited a "reckless disregard for the judicial proceedings," which

24

would be sufficient on its own to bar him from relief. *See Compania Interamericana*, 88 F.3d at 951–52.

Schiano asserts, again relying on *Dassault*, that the district court should have resolved any "ambiguity" in his favor and concluded he learned of the lawsuit on February 16, 2017, the date of his second record communication regarding the lawsuit. He does so notwithstanding the January 17, 2017, email from his webhost telling him to "remove all sites named in the court order"—an email to which he responded an hour later not with "what court order?" but with "I need a day to open a hosting account . . . .  I will email you when that is complete." Even accepting Schiano's assertion on appeal that he learned of this lawsuit "[c]irca February 2017"—indeed, even assuming, *arguendo*, that he learned of the lawsuit on the last day of the month—we cannot see why he would need more than three weeks to contact the court when he argues so stridently that his livelihood depended on these websites.

Finally, we concur with the practical concerns the district court articulated: "Corporate Defendants, and Schiano in particular, cannot expect to hold [3840] out to the public to be their legal address—and receive benefits from doing so— without accepting the concomitant responsibilities." "To vacate the judgments even though Defendants make a hollow claim that they did not receive mail at their

25

last known address would be to reward them for failure to adhere to their

obligations."

In short, Schiano has failed to demonstrate good cause.

\* \* \*

As we once remarked in reversing a district court for setting aside a default

judgment:

> The district court, in granting the defendants' motion to set aside the default and the default judgment, provided no reason for granting the motion other than its belief that the case ought to be decided on the merits.  This is certainly a noble sentiment; inherent in the adversary system of justice is the idea that each side ought to be heard prior to a court's entry of final judgment.  However, that same system requires that the court have the power to compel parties to appear before it.  The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court.  If these defaults could be put aside without cause, the threat of default would be meaningless, and courts would lose much of their power to compel participation by civil defendants.

*African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1203 (11th Cir.

1999).  This case perfectly illustrates that point.

The judgment of the district court is **AFFIRMED.**[17]

---

[17] Friedman's motion to strike is **DENIED** as moot.

26